IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

|  |  |  |
|---|---|---|
| DENNIS ROSS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 2:06-CV-116-RWS |
| v. | : | |
| | : | |
| METROPOLITAN CHURCH OF GOD and CHARLIE B. RAMSEY, JR., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This case comes before the Court on Defendants Metropolitan Church of God and Charlie B. Ramsey, Jr.'s Motion to Dismiss [4]. After reviewing the record, the Court enters the following Order.

## **Background**

Plaintiff Dennis Ross, the former Pastor of Worship Arts of the Metropolitan Church of God ("Metropolitan Church"), brought this action in June 2006 against Defendant Metropolitan Church and its Senior Pastor in the

State Court of Forsyth County.  On August 4, 2006, Defendants removed the action on the basis of federal-question jurisdiction to this Court.  In his Complaint, Plaintiff asserts four causes of action relating to Defendants' termination of his employment in February 2004.  Count I alleges breach of contract; Count II alleges breach of implied-in-fact contract; Count III alleges wrongful termination on the basis of race in violation of 42 U.S.C. § 1981; and Count IV alleges promissory estoppel.  As this case comes before the Court on a motion to dismiss, the Court accepts as true the allegations in Plaintiff's Complaint.

   Plaintiff is an African American male with "extensive experience as a minister, as well as a composer, arranger, producer, [and] pianist."  In October 2003, while Plaintiff was residing in Los Angeles, California, Plaintiff interviewed with Senior Pastor Ramsey for the position of Minister of Worship Arts at the Metropolitan Church in Cumming, Georgia.  The job involved leading the Metropolitan Worship Arts Department, conducting musical activities at the church, and assisting in the production of CDs, videos, and other products.  As a result of the interview, Pastor Ramsey offered Plaintiff the position, and Plaintiff accepted.

AO 72A
(Rev.8/82)

In December 2003, Plaintiff moved to Duluth, Georgia, and began working as the Pastor of Worship Services at the Metropolitan Church. Shortly after Plaintiff commenced his employment, however, Pastor Ramsey began making racially insensitive comments to him, such as "Latinos are lazy," and "more blacks will probably join the church now that you are here, I guess we'll get more 'rims.'" Pastor Ramsey also expressed dissatisfaction with Plaintiff's music, telling Plaintiff that "this is a white church, Shirley Caesar music won't work here," and "since you've come, the church is experiencing white flight." On February 24, 2004, Pastor Ramsey terminated Plaintiff. This action followed.

## Discussion

**I.      Motion to Dismiss Standard**

When considering a FED. R. CIV. P. 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). Thus, a complaint may not be dismissed under Rule

AO 72A
(Rev.8/82)

12(b)(6) "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Rosen v. TRW, Inc., 979 F.2d 191, 194 (11th Cir. 1992) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).

## II.    Defendants' Motion to Dismiss

Defendants have moved to dismiss Plaintiff's Complaint, arguing, among other things, that Plaintiff's § 1981 claim is barred by the ministerial exception of the First Amendment, which forbids courts from encroaching on the ability of a church to manage its internal affairs.  As explained below, the Court agrees with Defendants' contention, and dismisses with prejudice Plaintiff's § 1981 claim.  But because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, the Court remands the remainder of this action to state court.

### A.    Ministerial Exception Bars Plaintiff's § 1981 Claim

The Free Exercise and Establishment Clause of the First Amendment prohibit a church from being sued by its clergy for decisions relating to its internal management and administration.  See Gellington v. Christian Methodist Episcopal Church, Inc., 203 F.3d 1299, 1304 (11th Cir. 2000) (affirming

4

summary judgment in favor of church in Title VII suit brought by an ordained minister on the basis of the First Amendment's ministerial exception). In Gellington, the Eleventh Circuit reaffirmed the "ministerial exception" to civil rights legislation,[1] reasoning that " '[t]he relationship between an organized church and its ministers is its lifeblood,' " and thus "[a]n attempt by the government to regulate the relationship . . . would infringe upon the church's right to be the sole governing body of its ecclesiastical rules and religious doctrine." Id. (quoting McClure v. Salvation Army, 460 F.2d 553, 558-59 (5th Cir. 1972)). Gellington follows a consensus of federal cases in recognizing the ministerial exception, and makes explicit its provenance in the First Amendment of the United States Constitution. See id. at 1305.

The ministerial exception is most often raised as a defense to the inquiry required by a Title VII employment discrimination action. See id.; McClure,

---

[1] In its original conception, the "ministerial exception" arose as an exception to the application of Title VII to religious institutions. See Rayburn v. Conference of Seventh-Day Adventists, 772 F.2d 1164, 1168 (4th Cir. 1985) (coining the phrase "ministerial exception to Title VII"). As the Court's discussion below makes clear, however, its application to other federal and state laws outside of Title VII has rendered its title somewhat obsolete. It has been since described as "a constitutionally-derived exception to civil rights legislation that 'insulates a religious organization's employment decisions regarding its ministers from judicial scrutiny.'" Elvig v. Ackles, 98 P.3d 524, 527 (Wash. Ct. App. 2004) (citing Bollard v. Cal. Province of the Soc'y of Jesus, 196 F.3d 940, 944 (9th Cir. 1999)).

460 F.3d at 558. Its constitutional protection, however, is equally robust in actions brought under other state and federal laws which interfere in matters of church governance. The ministerial exception has been held to bar actions brought under the Age Discrimination in Employment Act, e.g., Tomic v. Catholic Diocese of Peoria, 442 F.3d 1036, 1040 (7th Cir. 2006); Hankins v. Lyght, 441 F.3d 96 (2d Cir. 2006); Minker v. Balt. Annual Conference of United Methodist Church, 894 F.2d 1354 (D.C. Cir. 1990); the Americans with Disabilities Act, e.g., Hollins v. Methodist Healthcare, Inc., ___ F.3d ___, 2007 WL 63714 (6th Cir. Jan. 10, 2007); Werft v. Desert Sw. Annual Conference of the United Methodist Church, 377 F.3d 1099 (9th Cir. 2004); Starkman v. Evans, 198 F.3d 173 (5th Cir.1999); the Fair Labor Standards Act, e.g., Schleicher v. Salvation Army, No. 1:06-CV-545-RLY, 2007 WL 129041, at *3-4 (S.D. In. Jan. 12, 2007); the Family Medical Leave Act, e.g., Shaliehsabou v. Hebrew Home of Greater Wash., 363 F.3d 299, 307, 369 F.3d 797 (4th Cir. 2004); Fassl v. Our Lady of Perpetual Help Roman Catholic Church, No. 05-CV-404, 2005 WL 2455253 (E.D. Pa. Oct. 5, 2005); state civil conspiracy and negligent supervision tort laws, e.g., Petruska v. Gannon Univ., 462 F.3d 294 (3d Cir. 2006); and state labor laws, e.g., Natal v. Christian Missionary

6

Alliance, 878 F.2d 1575 (1st Cir. 1989).[2] Moreover, at least two courts have applied the ministerial exception to bar actions alleging discrimination under 42 U.S.C. § 1981. See Bogan v. Mississippi Conference of United Methodist Church, 433 F. Supp. 2d 762, 763 (S.D. Miss. 2006); Stately v. Indian Community School of Milwaukee, Inc., 351 F. Supp. 2d 858, 869 (E.D. Wis. 2004).

Despite its name, the ministerial exception is not limited to the minister-church relationship. While the Eleventh Circuit has thus far only had occasion to apply the ministerial exception to ordained ministers, see Gellington, 203 F.3d at 1301; McClure, 460 F.2d at 555, the doctrine has been readily extended in other jurisdictions to bar claims brought by other church employees. In determining whether the exception applies, courts have generally focused on the function of the plaintiff's employment position rather than the plaintiff's title. See, e.g., Rayburn v. Gen. Conference of Seventh-Day Adventists, 772 F.2d 1164, 1168 (4th Cir. 1985). If "the employee's primary duties consist of

---

[2] While the ministerial exception generally applies to bar state law tort claims that require an inquiry into church administrative decisionmaking, it has generally not been held to bar state law contract claims, because "application of state contract law does not involve government-imposed limits on [a church's] right to select its ministers," but rather seeks to enforce a purely voluntary promise. See Petruska, 462 F.3d at 310.

teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship," or the position is "important to the spiritual and pastoral mission of the church," the plaintiff may be considered a "minister" for purposes of the ministerial exception.  Id.

Applying this analysis, two circuit courts of appeals have extended the ministerial exception to musical directors of religious institutions.  See Tomic, 442 F.3d at 1037 (musical director and organist); Starkman v. Evans, 198 F.3d 173, 174 (5th Cir. 1999) (choir director).  It has also been applied to bar an action brought by a former church press secretary because "[d]etermination of whose voice speaks for the church is a *per se* religious matter." Alicea-Hernandez v. Catholic Bishop of Chicago, 320 F.3d 698, 703-04 (7th Cir. 2003) (citing Minker, 894 F.2d at 1356)).  Likewise, the doctrine has been applied to other positions determined to be religious in nature.  See, e.g., Hollins, 2007 WL at *1 (resident in hospital pastoral education program); Petruska, 462 F.3d at 299 (college chaplain); E.E.O.C. v. Catholic Univ. of Am., 83 F.3d 455, 467 (D.C. Cir. 1996) (nun); Rayburn, 772 F.2d at 1168 (associate in pastoral care); Schleicher, 2007 WL 129041, at *4 (administrator

AO 72A
(Rev.8/82)

of adult rehabilitation center of Salvation Army); Curay-Cramer v. Ursuline Academy of Wilmington, Delaware, Inc., 344 F. Supp. 2d 923, 932-33 (D. Del. 2004) (religion teacher at parochial high school); Shaliehsabou, 363 F.3d at 307 (kosher food supervisor); Musante v. Notre Dame of Easton Church, 2004 WL 721774, at *2 (D. Conn. Mar. 30, 2004) (director of religious education).

In Tomic, the Seventh Circuit held that the ministerial exception applied to bar an organist and music director's ADEA claim against his former church because the plaintiff, by playing music on behalf of a Catholic church, "performed tasks that were 'traditionally ecclesiastical or religious.'" 442 F.3d at 1041 (quoting Starkman, 198 F.3d at 177). The court rejected the plaintiff's contention that his job was task-oriented, and not religious in nature, because it concluded that music was an inextricably religious activity when played at church. Judge Posner, writing for a unanimous panel, explained:

> The religious music played at a wedding is not necessarily suitable for a funeral; and religious music written for Christmas is not necessarily suitable for Easter. Even Mozart had to struggle over what was suitable church music with his first patron . . . . Music is a vital means of expressing and celebrating those beliefs which a religious community holds most sacred. Music is an integral part of many different religious traditions, including the Catholic tradition.

9

Id. at 1040-41 (citations and quotations omitted).

Despite the plaintiff's contention that the court would need to examine the church's decision to terminate the plaintiff only as it related to his skills as a musician and his age, the court nonetheless concluded that the inquiry required by the ADEA would inevitably lead to a religious controversy, because the church's decisions regarding the hiring of a musical performer involved religious considerations. The court explained:

> The reference in the complaint in this case to the dispute between Tomic and the bishop's assistant suggests that if the suit were permitted to go forward, the diocese would argue that he was dismissed for a religious reason—his opinion concerning the suitability of particular music for Easter services—and the argument could propel the court into a controversy, quintessentially religious, over what is suitable music for Easter services. Tomic would argue that the church's criticism of his musical choices was a pretext for firing him, that the real reason was his age. The church would rebut with evidence of what the liturgically proper music is for an Easter Mass and Tomic might in turn dispute the church's claim. The court would be asked to resolve a theological dispute.

Id. at 1040.

Thus, the court concluded, the ministerial exception barred the plaintiff's ADEA claim. Id.; see also Starkman, 198 F.3d at 176-177 (concluding that choir director's ADA and state labor-law claims were barred by ministerial exception because "religious music plays a highly important role in the spiritual mission of the church," the plaintiff was required to "coordinate church and worship activities relating to the church's Music Ministry, rehearse with choirs and conduct those choirs, hire musicians and lower level music ministry directors, and write articles about the church's Music Ministry for the weekly church bulletin," and because "music constitutes a form of prayer that is an integral part of worship services and Scripture readings").

In the instant case, the Court has little difficulty in concluding, as did the Seventh Circuit in Tomic and the Fifth Circuit in Starkman, that Plaintiff's § 1981 action is barred by the ministerial exception. As an initial matter, the Court agrees with its sister courts that have addressed the issue that the ministerial exception, which has its roots in the First Amendment, applies to protect religious institutions from the intrusive inquiry required in a § 1981 action alleging race discrimination. See Bogan, 433 F. Supp. 2d at 763; Stately, 351 F. Supp. 2d at 869.

11

Moreover, there can be little doubt that Plaintiff's position as the director of the Worship Arts Department of the Metropolitan Church falls within the ambit of the ministerial exception.  It is clear from Plaintiff's Complaint that his position as Pastor of Worship Services is "important to the spiritual and pastoral mission of the church."  Rayburn, 772 F.2d at 1169.  Plaintiff's primary duties, which include supervising the Worship Arts Department and directing the musical affairs of the Metropolitan Church, involve "church governance . . . or supervision or participation in religious ritual and worship," and are thus ecclesiastical in nature.  Id. at 1169.  As such,  Plaintiff's race discrimination claim brought pursuant to § 1981 would require this Court to encroach into the internal affairs of church management and is thus barred by the ministerial exception of the First Amendment.

To be sure, Plaintiff is correct that the application of the ministerial exception requires a fact-specific inquiry and a determination of the functions of a church employee.  Nonetheless, courts have regularly dismissed  actions barred by the ministerial exception pursuant to a Rule 12b(6) motion on the basis of the allegations contained in the plaintiff's complaint.  See Hollins, 2007 WL at *1; Petruska, 462 F.3d at 299;  Tomic, 442 F.3d at 1037;

Cooper-Igwebuike v. United Methodist Church, 160 Fed. App'x 549, 549 (8th Cir. 2005); Werft, 377 F.3d at 1100; Catholic Univ., 83 F.3d at 457; Ajabu v. St. James United Methodist Church, No. 3:06-CV-9-CAR, 2006 WL 2263976, at *2 (M.D. Ga. Aug. 8, 2006). Where the plaintiff's "own complaint establishes that her primary duties involved ministerial functions," her action may be properly dismissed in accordance with the ministerial exception. Petruska, 462 F.3d at 307 n.10.

Here, Plaintiff's allegations indicate that, as the Pastor of Worship Arts, he was a "minister" and "composer" who was "running the Worship Arts Department" as its "next leader." Pastor Ramsey's alleged statement that "Shirley Caesar music won't work here" makes clear that, were this case to proceed, it would inevitably lead into a dispute over the propriety of the Metropolitan Church's governance decisions. The Court would quickly be called on to determine the validity of Pastor Ramsey's distaste for Plaintiff's music, and whether he was motivated by a genuinely religious or invidiously discriminatory intent in terminating Plaintiff. Indeed, "his opinion concerning the suitability of [Plaintiff's] music . . . could propel the court into a controversy, quintessentially religious," over what is suitable music for worship

13

services at the Metropolitan Church.  See Tomic, 442 F.3d at 1040.  The First Amendment forbids that inquiry.  Accordingly, insofar as Defendants seek dismissal of Plaintiff's § 1981 claim, their motion is **GRANTED.**

### B.     Plaintiff's Remaining Claims

As the result of this Court's dismissal of Plaintiff's only federal claim at issue, the Court turns to examine whether it should exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  However, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

In determining whether to exercise supplemental jurisdiction over pendent state law claims under § 1367(c), a court should consider the interests of judicial economy, convenience, fairness to the litigants, and comity.  See

Palmer v. Hosp. Auth. of Randolph County, 22 F.3d 1559, 1569 (11th Cir. 1994) (holding that these factors, as provided by the Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966), survive the enactment of § 1367).  "When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 & n. 7, 108 S. Ct. 614, 619 n. 7, 98 L. Ed. 2d 720 (1988); see also Arnold v. Tuskegee Univ., No. 06-11156, 2006 WL 3724152, at *6 (11th Cir. Dec. 19, 2006) ("When the district court has dismissed all federal claims from a case, there is a strong argument for declining to exercise supplemental jurisdiction over the remaining state law claims."); Baggett v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (same).

In the instant case, the Court has dismissed Plaintiff's only federal-law claim in the early stages of this litigation.  The resolution of Plaintiff's remaining claims depends exclusively on determinations of state law.  As the Eleventh Circuit has admonished, "[s]tate courts, not federal courts, should be

15

the final arbiters of state law." Id. Considerations of comity therefore singularly favor a remand of this action to state court. Furthermore, the Court finds that judicial economy, fairness, and convenience favor resolution by a state court of the remaining claims in this case. "This is especially true here where the Court is dismissing Plaintiff's federal law claim prior to trial." Id. Accordingly, insofar as Defendant moves to dismiss Plaintiff's remaining claims, that motion is **DENIED as moot** and the case is **REMANDED** to the State Court of Forsyth County for further proceedings.

## Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [4] is hereby **GRANTED in part and DENIED in part**. It is granted insofar as it seeks dismissal with prejudice of Count III of Plaintiff's Complaint alleging race discrimination under 42 U.S.C. § 1981. The Clerk is **DIRECTED** to enter judgment for Defendants on Count III of Plaintiff's Complaint. It is denied as moot insofar as it seeks dismissal of Counts I, II, and IV of Plaintiff's Complaint.

The Clerk is **DIRECTED** to **REMAND** this case to the State Court of Forsyth County, Georgia, and to **TRANSMIT** a certified copy of this Order to

the Clerk of that Court. The Clerk is **FURTHER DIRECTED** to **CLOSE** this case following entry of judgment and remand.

**SO ORDERED** this   23rd   day of January, 2007.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE